IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-22696

EXXON MOBIL CORPORATION,

        Plaintiff,

v.

THE INDIVIDUALS AND BUSINESS ENTITIES
IDENTIFIED ON SCHEDULE A,

        Defendants.
_____/

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING**

Plaintiff, Exxon Mobil Corporation ("ExxonMobil") sues Defendants, the Individuals and Business Entities identified on Schedule "A" (collectively "Defendants"), and alleges:

**Parties**

1. Plaintiff, Exxon Mobil Corporation, is a New Jersey corporation having its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas 75039.

2. Defendants are individuals and business entities, each of whom, upon information and belief, either reside and/or operate in Florida, redistribute products from the same or similar sources in Florida, and/or ship their goods from the same or similar sources in Florida to consumers as well as shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

3. Defendants are the past and present controlling forces behind the sale of products using counterfeits and infringements of ExxonMobil's trademarks as described herein and each of

1

the individual defendants directs, controls, ratifies, participates in, or is the active, moving force behind the activity complained of herein.

## Nature of Action and Jurisdiction

4. This is an action for federal trademark infringement under 15 U.S.C. §§ 1114 and 1125, and other related claims under federal and Florida law.

5. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338 because of claims arising under the Lanham Act (15 U.S.C. §§ 1051, *et. seq*.), and pendant jurisdiction over the remaining claims under 28 U.S.C. § 1367.

6. The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Accordingly, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

7. Defendants are subject to personal jurisdiction in Florida under Fla. Stat. §§ 48.193(1)(a)(1) and (2) because Defendants are operating, conducting, engaging in, or carrying on a business in this state or has an office in this state, and because Defendants are committing tortious acts within this State including trademark infringement, dilution, counterfeiting, and unfair competition likely to cause consumer confusion and causing Plaintiff to suffer harm in Florida. The events giving rise to this Complaint have occurred in this State and have effects in this State and District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, Defendants reside in this District and regularly conduct business in Florida and in this District, and a substantial part of the events giving rise to the acts complained of herein occurred in this District.

**Facts**

**I.      ExxonMobil's Trademarks**

9.      ExxonMobil, along with its predecessors and affiliates, is the world's largest publicly traded international oil and gas company.

10.      Since at least the 1930s, ExxonMobil or its predecessors have continuously used the MOBIL trademark in commerce in connection with a wide variety of products and services, including the sale and promotion of automotive service station services, motor fuels, motor oils, lubricants, vehicle lubrication services, and other petroleum products, and various other products and services.

11.      MOBIL branded stations and lubrication centers are among the most widespread and recognizable service stations in the United States.  There are thousands of MOBIL branded retail outlets in the United States with billions of dollars in annual sales.

12.      Over the years, ExxonMobil has invested many millions of dollars advertising and promoting its MOBIL branded goods and services, and has expended great efforts to ensure that its products and services meet high standards of quality, safety, and performance.  As a result, ExxonMobil has developed goodwill, public recognition, and strong rights in its marks, which consumers have come to know and trust as symbols of quality and value.

13.      Since at least 1966, ExxonMobil has used in commerce the MOBIL mark in a distinctive composition, with blue lettering for all letters except the "o" which is presented in red, such as in the famous MOBIL in Red and Blue shown immediately below (the "MOBIL Logo").



14. For many years, ExxonMobil has also widely and continuously used in commerce the marks MOBIL 1, MOBIL 1 LUBE EXPRESS, DELVAC, DELVAC 1, and other related marks in connection with its products and services.

15. ExxonMobil has also long been using in commerce the design of a flying horse, such as the famous "Pegasus" mark shown immediately below (the "Mobil Pegasus"), on or in connection with its products and services.



ExxonMobil's marks referenced in paragraphs 9 and 12-14, including the mark MOBIL, the Mobil Logo, MOBIL 1, MOBIL 1 LUBE EXPRESS, DELVAC, DELVAC 1, and the Mobil Pegasus, are hereinafter collectively referred to as the "MOBIL Marks."

16. Relevant consumers recognize and rely upon the MOBIL Marks as indicators of origin and as symbols of quality and value.

17. The MOBIL Marks are inherently distinctive, serving to identify and indicate the source of ExxonMobil's products and services to the consuming public, and to distinguish its products and services from those of others.

18. Additionally and alternatively, as a result of ExxonMobil's frequent and widespread usage and promotion of the MOBIL Marks, they have become distinctive to designate ExxonMobil's goods and services, to distinguish ExxonMobil's goods and services from the goods and services of others, and to distinguish the source or origin of ExxonMobil's goods and services.

4

19. ExxonMobil has invested considerable effort and resources in developing, using, advertising, and promoting the MOBIL Marks in the United States, and over an extensive period of time. Sales under the MOBIL Marks have been immense.

20. As a result of frequent and widespread use and promotion by ExxonMobil, the MOBIL Marks have become well-known and widely recognized by consumers in the State of Florida and throughout the United States to indicate the source of ExxonMobil's goods and services.

21. As a result of ExxonMobil's extensive usage and promotion of the MOBIL Marks, ExxonMobil has developed valuable goodwill in the marks.

22. The MOBIL Marks are famous.

23. ExxonMobil owns numerous federal trademark registrations for the MOBIL Marks, including the following:

| Mark | U.S. Reg. No. | Goods/Services |
|---|---|---|
| MOBIL | 337,002 | Lubricating oils and greases (Int'l Class 4) |
| MOBIL | 1,046,513 | Automotive service station services (Int'l Class 37) |
| MOBIL Logo | 1,015,027 | Antifreeze and coolants; automatic transmission fluid (Int'l Class 1)<br><br>Circulating oil; engine oil; gasoline; greases; lubricating oil; machinery oil; metal processing oil; motor oil; penetrating oil (Int'l Class 4) |
| MOBIL Logo | 1,049,824 | Automotive service station services including car wash services and emergency road services (Int'l Class 37) |
| MOBIL Logo | 3,787,476 | Motor fuels, namely, gasoline and diesel fuels (Int'l Class 4) |
| MOBIL 1 | 1,044,603 | Synthesized engine lubricant (Int'l Class 4) |
| Mobil 1 | 6,006,277 | Oil filters (Int'l Class 7) |

| Mark | Registration No. | Goods/Services |
|---|---|---|
| Mobil 1 (logo) | 5,874,430 | Oil filters (Int'l Class 7) |
| MOBIL 1 LUBE EXPRESS | 4,960,351 | Automobile lubrication services (Int'l Class 37) |
| DELVAC | 195,167 | Lubricating oils (Int'l Class 4) |
| DELVAC | 5,889,196 | Transmission fluids; antifreeze; coolants (Int'l Class 1) |
| DELVAC 1 | 1,254,259 | Synthesized engine oils (Int'l Class 4) |
| MOBIL DELVAC MODERN | 6,789,852 | Industrial oils and greases; lubricants; motor oils (Int'l Class 4) |
| Pegasus (black logo) | 355,206 | Lubricating oils (Int'l Class 4) |
| Pegasus (red logo) | 5,404,613 | Transmission fluids; hydraulic fluids; antifreeze; coolants (Int'l Class 1)<br><br>Motor oils; lubricating oils; lubricating greases; automotive, marine and industrial lubricants; synthetic automotive engine lubricants; waxes; motor fuels, namely, gasoline and diesel fuels (Int'l Class 4) |

Attached hereto as **Exhibit** are true and correct copies of these federal registrations.

24.     The MOBIL Marks, as represented by Federal Registration Nos. 195,167, 337,002, 355,206, 1,015,027, 1,044,603, 1,046,513, 1,049,824, 1,254,259, and 3,787,476, have achieved incontestable status under 15 U.S.C. § 1065. Such registrations constitute conclusive evidence of the validity of the registered marks and of the registration of the marks, of the registrant's ownership of the marks, and of the registrant's exclusive right to use the registered marks in commerce, pursuant to 15 U.S.C. § 1115(b).

II.     <u>Defendants' Unauthorized Use of ExxonMobil's Trademarks</u>

25.     Defendants, without authority, have offered and are offering for sale or promoting non-genuine lubricating oil in packaging bearing the MOBIL Marks, or spurious marks identical or confusingly similar to or substantially indistinguishable from, the MOBIL Marks (the

"Counterfeit Marks"), including exporting such non-genuine counterfeit products and promoting such products on their website (screenshots included in Schedule "A") and elsewhere. Examples of such non-genuine counterfeit products bearing the Counterfeit Marks sold by Defendants are shown directly below. The products bearing the Counterfeit Marks are referred to herein as the "Counterfeit Products."

  

26. Defendants are not an authorized ExxonMobil dealer and have no permission to sell or offer for sale or promote ExxonMobil's lubricating oils or other products to customers, or to use the MOBIL Marks.

27. Defendants have set out on a deliberate course of conduct to deceive consumers into believing that it or the Counterfeit Products are connected, associated, or affiliated with ExxonMobil in order to trade on ExxonMobil's valuable goodwill. Defendants' efforts to deceive the public into believing that it or the Counterfeit Products are affiliated with or authorized by ExxonMobil include Defendants' intentional use of the Counterfeit Marks in commerce by selling the Counterfeit Products, even though Defendants have no permission to do so and is not currently affiliated with ExxonMobil in any way.

28. Defendants' use of the Counterfeit Marks is without the permission or authority of ExxonMobil.

29. Defendants' unauthorized use of the Counterfeit Marks began after the MOBIL Marks became famous.

### III. Effect of Defendants' Unlawful Activities on ExxonMobil and the Consuming Public

30. Defendants' unauthorized use of the Counterfeit Marks and offering for sale of the Counterfeit Products is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of the parties as to some affiliation, connection, or association of Defendants' goods and services with ExxonMobil, or as to the origin, sponsorship, or approval of Defendants' goods or services offered by ExxonMobil.

31. Defendants' use of the Counterfeit Marks on the Counterfeit Products falsely indicates to the purchasing public that Defendants, their business, and their goods or services originate with ExxonMobil, or are affiliated, connected, or associated with ExxonMobil, or are sponsored, endorsed, or approved by ExxonMobil, or are in some manner related to ExxonMobil or its goods or services.

32. Defendants' use of the Counterfeit Marks falsely or misleadingly describes and represents facts with respect to Defendants and their goods and services.

33. Defendants' use of the Counterfeit Marks enables Defendants to trade on and receive the benefit and goodwill built up at great labor and expense over many years by ExxonMobil, and to gain acceptance for Defendants' business not solely on Defendants' own merits, but on the reputation and goodwill of ExxonMobil and its marks, goods, and services.

34. Defendants' use of the Counterfeit Marks enables Defendants to palm off their goods on the unsuspecting public as those meeting ExxonMobil's quality control standards.

35. Defendants' use of the Counterfeit Marks removes from ExxonMobil the ability to control the nature and quality of goods provided under the MOBIL Marks, and places the valuable

reputation and goodwill of ExxonMobil in the hands of Defendants, over whom ExxonMobil has no control.

36. As a result of Defendants' use of the Counterfeit Marks, Defendants are being unjustly enriched at the expense of ExxonMobil and the public.

37. On information and belief, Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities.

38. Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to ExxonMobil.

39. ExxonMobil is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the MOBIL Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, ExxonMobil and the consuming public will continue to be harmed.

40. Further, unless restrained by this Court, these acts of Defendants will continue, and they will continue to cause irreparable injury to ExxonMobil and to the public, for which there is no adequate remedy at law.

### IV. Willful Nature of Defendants' Wrongful Acts

41. Defendants' acts of infringement, dilution, counterfeiting, and unfair competition complained of herein have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of ExxonMobil's rights. In view of the

egregious nature of Defendants' actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT I
### Federal Trademark Infringement (15 U.S.C. § 1114(1))

42. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

43. The acts of Defendants complained of herein constitute infringement of ExxonMobil's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44. Defendants' acts of infringement have been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

45. As a proximate result of the acts of Defendants as alleged herein, ExxonMobil has suffered and will continue to suffer great damage to its trademarks, business, goodwill, reputation, and profits.

46. ExxonMobil has no adequate remedy at law for the infringement of its trademarks alleged herein.  Unless Defendants are enjoined by this Court, ExxonMobil will continue to be damaged by Defendants' acts of federal trademark infringement and will suffer irreparable harm.

## COUNT II
### Violation of Lanham Act § 1125(a) )

47. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

48. The acts of Defendants complained of herein constitute trademark infringement, false designations of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. ExxonMobil has been damaged by Defendants' acts of trademark infringement, false designations of origin, false or misleading descriptions or representations of fact and unfair competition.

50. Defendants' acts of trademark and trade dress infringement, false designations of origin, false or misleading descriptions or representations of fact and unfair competition have been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

51. As a proximate result of the acts of Defendants as alleged herein, ExxonMobil has suffered and will continue to suffer great damage to its trademarks, business, goodwill, reputation, and profits.

52. ExxonMobil has no adequate remedy at law for the infringement of its trademarks alleged herein. Unless Defendants are enjoined by this Court, ExxonMobil will continue to be damaged by Defendants' acts of federal trademark infringement and will suffer irreparable harm.

## COUNT III
### Federal Trademark Counterfeiting (15 U.S.C. § 1114)

53. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

54. The acts of Defendants complained of herein, namely, the unauthorized use of the Counterfeit Marks, or marks or trade dress confusingly similar thereto, on or in connection with the Counterfeit Products, constitute use of counterfeit marks in advertising and on or in connection with the sale, marketing, offering for sale and distribution of products and services in commerce.

55. Defendants are intentionally using the MOBIL Marks knowing that it was selling or offering to sell counterfeit products and services.

56. The acts of Defendants complained of herein constitute counterfeiting in violation of 15 U.S.C. § 1114, and have been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

57. As a proximate result of the acts of Defendants as alleged herein, ExxonMobil has suffered and will continue to suffer great damage to its trademarks, trade dress, business, goodwill, reputation and profits.

58. ExxonMobil has no adequate remedy at law for the trademark counterfeiting alleged herein. Unless Defendants are enjoined by this Court, ExxonMobil will continue to be damaged by Defendants' acts of trademark counterfeiting and will suffer irreparable harm.

## COUNT IV
## Federal Trademark Dilution (15 U.S.C. § 1125(c))

59. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

60. The acts of Defendants complained of herein constitute dilution by blurring and dilution by tarnishment of ExxonMobil's famous MOBIL Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

61. Defendants willfully intended to trade on the recognition of the famous MOBIL Marks and to harm the reputation of the famous MOBIL Marks.

62. As a proximate result of the acts of Defendants as alleged herein, ExxonMobil has suffered and will continue to suffer great damage to its trademarks, trade dress, business, goodwill, reputation and profits.

63. ExxonMobil has no adequate remedy at law for the dilution of its trademarks as alleged herein. Unless Defendants are enjoined by this Court, ExxonMobil will continue to be damaged by Defendants' acts of federal trademark and trade dress dilution and will suffer irreparable harm.

## COUNT V
## Unfair Competition under Florida Law

64. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

65. The acts of Defendants complained of herein constitute trademark infringement and unfair competition in violation of Fla. Stat. § 495.161 and the common law of the State of Florida.

## COUNT VI
### Dilution under Florida Law

66. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

67. The acts of Defendants complained of herein constitute trademark dilution in violation of Fla. Stat. § 495.151.

## COUNT VII
### Unjust Enrichment

68. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

69. The acts of Defendants complained of herein constitute unjust enrichment of Defendants at ExxonMobil's expense in violation of the common law of Florida.

70. ExxonMobil has been damaged by Defendants' acts of unjust enrichment.

## COUNT VIII
### Florida Deceptive and Unfair Trade Practices (Fla. Stat. § 501.201 et. seq.)

71. ExxonMobil reasserts paragraphs 1-41 as though set forth in full herein.

72. By unlawfully capitalizing on and misappropriating ExxonMobil's well-known marks and reputation, including trademark infringement, false designation of origin, and unfair competition, Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade or commerce in violation of Fla. Stat. § 501.204.

73. ExxonMobil has suffered actual damages proximately caused by Defendants' deceptive and unfair trade practices.

74. Customers and potential customers are also being harmed because they are being misled and confused by Defendants' activities.

75. ExxonMobil and customers and potential customers are being irreparably harmed by Defendants' deceptive and unfair trade practices and do not have an adequate remedy at law.

76. ExxonMobil is entitled to injunctive relief, declaratory relief, and actual damages under Fla. Stat. § 501.211 and attorneys' fees under § 501.2105.

## **Prayer for Relief**

WHEREFORE, as to all claims in this Complaint, ExxonMobil demands the following:

a) A Final Judgment finding that Defendants have: i) infringed the Federal Registration Nos. 195,167, 337,002, 355,206, 1,015,027, 1,044,603, 1,046,513, 1,049,824, 1,254,259, 3,787,476, 4,960,351, 5,404,613, 5,874,430, 5,889,196, 6,006,277, and 6,789,852 under 15 U.S.C. § 1114(1); ii) engaged in unfair competition, including trademark infringement, false designations of origin, or false or misleading descriptions or representations of fact under 15 U.S.C. § 1125(a); iii) engaged in federal trademark counterfeiting under 15 U.S.C. § 1114; iv) engaged federal trademark dilution under 15 U.S.C. § 1125(c) and Fla. Stat. § 495.151; v) engaged in unfair competition under Fla. Stat. § 495.161 and the common law of Florida; v) engaged in deceptive and unfair trade practices under Fla. Stat. § 501.201 et. seq.; and vi) been unjustly enriched at ExxonMobil's expense under Florida law;

b) a permanent and preliminary injunction under 15 U.S.C. § 1116, Fla. Stat. § 495.141, and Florida law prohibiting and restraining Defendants, Defendants' agents, servants, employees, attorneys, related companies, and all those persons in active concert or participation with them, from infringing the MOBIL Marks, including using any element thereof, and any other mark or designation confusingly similar thereto;

14

  c) an injunction permanently enjoining and restraining Defendants, their managers, members, officers, employees, agents, servants, attorneys, successors and assigns, related companies and all those persons in active concert or participation with them, and all of them, from using the MOBIL Marks, and from using any other designation or mark, including in search engine optimization and metatags, that contains the MOBIL Marks or any formative variation thereof, or that is otherwise confusingly similar to the MOBIL Marks;

  d) an Order requiring Defendants to file with this Court and to serve upon ExxonMobil, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

  e) an award of compensatory damages and special damages as a result of Defendants' infringement, dilution, counterfeiting, false designations of origin, false or misleading descriptions or representations of fact, unfair competition, and unfair and deceptive business practices and that said damages be trebled;

  f) disgorgement of Defendants' profits plus actual damages to ExxonMobil and costs, increased by an amount equal to three times such damages because of Defendants' willful violations under 15 U.S.C. § 1117(a) and (b) and Fla. Stat. § 495.141;

  g) an award of actual damages under Fla. Stat. § 501.211(2);

  h) an Order requiring Defendants to file with this Court and to serve upon ExxonMobil an accounting to determine Defendants' profits resulting from Defendants' activities, and that such profits be paid over to ExxonMobil, increased as the Court finds to be just under the circumstances of this case or trebled under 15 U.S.C. § 1117 as a result of Defendants' counterfeiting;

   i)  alternatively, if greater, an award of statutory damages under 15 U.S.C. § 1117 as a result of Defendants' counterfeiting;

   j)  an award of attorneys' fees, costs, and pre- and post-judgment interest under 15 U.S.C. § 1117, Fla. Stat. § 495.141, Fla. Stat. § 501.211(2), Fla. Stat. § 501.2105, and as otherwise permitted under the law;

   k)  an award of costs and prejudgment and post-judgment interest; and

   l)  such other and further relief as this Honorable Court deems just and proper.

**Jury Demand**

Under Fed. R. Civ. P. 38(b), ExxonMobil demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted,

Date:  August 25, 2022

By: */s/ Matthew S. Nelles*
Matthew S. Nelles
Florida Bar No. 009245
mnelles@nklawflorida.com
NELLES KOSTENCKI, PLLC
Corporate Center
110 E. Broward Boulevard, Suite 670
Fort Lauderdale, FL  33301
O:  (954) 246-4800; F:  (954) 246-4900
E:  paralegal@nklawflorida.com

Stephen P. Meleen
Texas Bar No. 00795776
smeleen@pirkeybarber.com
Tyson D. Smith
Texas Bar No. 24079362
tsmith@pirkeybarber.com
PIRKEY BARBER PLLC
1801 E. 6th Street, Suite 300
Austin, TX  78702
Telephone: (512) 322-5200
Fax: (512) 322-5201
(*Pending Pro Hac Vice*)

**ATTORNEYS FOR**
**EXXON MOBIL CORPORATION**

# SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal. As such, this document has been omitted in accordance with L.R. 5.4(b)(1)]**